# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

AKO BURRELL,

                      Plaintiff,

   v.                                                     9:19-CV-1629 (TJM/ATB)

ROBERT MACIOL, et. al.,

                      Defendants.

AKO BURRELL, Plaintiff pro se
DAVID A. BAGLEY, ESQ., for Defendants Maciol, Swenszkowski, and Pfliger
JONATHAN E. SYMER, ESQ., for Defendant Correctional Medical Care
PATRICK M. CAREY, ESQ., for Defendant Trinity Food Service Group Incorporated

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

In the relevant portions of this amended civil rights complaint, plaintiff alleges Fourteenth Amendment due process violations, allegedly committed by defendants Correctional Medical Center ("CMC"), Trinity Food Service Group Incorporated ("Trinity"), and Jennifer Sowers relative to plaintiff's diet at Oneida Correctional Facility ("OCF") between October of 2016 to October of 2017. (Amended Complaint ("AC")) (Dkt. No. 42). Presently before the court is the motion to dismiss filed by defendant CMC pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 81).[1] Plaintiff has filed

---

[1] This motion to dismiss was filed only by CMC, and the court's report and recommendation applies only to this defendant. On August 23, 2021, I recommended granting a summary judgment motion filed by County defendants Robert Maciol, Robert Swenszkowski, and Gregory Pfliger based on a release signed by plaintiff in another action. (Dkt. No. 95). Plaintiff filed objections to my Report-Recommendation, and it is currently pending before Senior Judge McAvoy. (Dkt. No. 112). The court notes that, in his objections to my report and recommendation, filed November 8, 2021, plaintiff included a request to "place an abeyance" because he was quarantined in the Clinton Correctional Facility Medical Center and could not access his legal documents, even though he attached his

a response in opposition to the motion, and defendant has filed a reply. (Dkt. Nos. 103, 108). For the following reasons, this court agrees with defendant and will recommend dismissal of the amended complaint as against CMC.

## DISCUSSION

I.   **Relevant Facts**

Plaintiff states that he was incarcerated at OCF from October 20, 2016 to October 20, 2017. (AC ¶ 39). Plaintiff claims that OCF had a "procurement policy" ("OPP") and a contract with defendant Trinity Food Service Group ("Trinity") to provide meals for the OCF inmates. (AC ¶ 41). Plaintiff states that in October of 2016, he was served a "standard diet," but after his Jewish faith was "acknowledged" by OCF officials, he was allowed to receive Kosher meals.[2] (AC ¶ 44).

Plaintiff alleges that both the "standard" diet meals and the Kosher meals were inferior. (AC ¶ 46). Plaintiff claims that meals were cold, meat was served "uncooked," and fruit was "spoiled," causing plaintiff to throw up. Plaintiff alleges that the menus were "approved" by both dietitian defendant Sowers and by CMC. Plaintiff claims that the menus "would have to be" approved by CMC, and that defendant CMC was "negligent" in its review of the menu because it approved of a menu that was below the

---

objections to my report and recommendation to the same document. (Dkt. No. 112 at 1 & Ex. A). Judge McAvoy has not acted on the report and recommendation, nor has any stay been granted to plaintiff. The court assumes that plaintiff's request for a stay applied to claims relating to future proceedings because the current motion was fully briefed prior to plaintiff's request. In any event, plaintiff's request may now be moot because he subsequently filed documents relating to discovery, which were stricken by the court, but which evidence plaintiff's ability to pursue this action. (*See* Dkt. No. 114).

[2] Plaintiff never specifies when he began receiving Kosher meals.

2900 calories "required" by the OPP and "bid specification # 1881." (AC ¶ 46, 77) (citing Pl.'s Ex. F). Plaintiff states that defendant Sowers and CMC have "official duties" to provide humane conditions of confinement to plaintiff, ensuring that he received adequate food and medical care.[3] (AC ¶ 46). Plaintiff claims that defendant Sowers and "CMC staff" reviewed the menus proposed by Trinity. (*Id.*)

Plaintiff claims that the Recommended Daily Allowance ("RDA") of 2900 calories was established by the National Academy of Sciences, New York Corrections Law § 45(6) and 9 NYCRR § 7009. (AC ¶ 47). Plaintiff states that he "realized" that Trinity was only providing 2600 calories and that he was served between 2400 and 2600 calories per day in his Kosher menu. (AC ¶¶ 48-49). This failure included portion sizes that were too small. (AC ¶ 51). Plaintiff claims that CMC was "required" to approve a 2900 calorie Kosher menu, and that CMC engaged in "unethical business practices" in failing to do so. (AC ¶¶ 52-53). Plaintiff states that his damages due to the "inhumane" food service related to, inter alia, weight loss and hunger pangs.[4]

## II.   Motion to Dismiss

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action,

---

[3] "Medical care" is not an issue in this motion.

[4] Specifically, plaintiff alleged that he was served "wet tissue," moldy bread, frozen french toast, spoiled fruit, cold meals, and uncooked meat. (AC ¶ 58). These substandard meals were also served on "dirty and roach contaminated" food service carts. (*Id.*)

3

supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial

4

notice of NLRB decisions)). *See also Combier-Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

### III. Section 1983 Generally/Color of State Law

#### A. Legal Standards

Section 1983 "provides a civil claim for damages against any person who, acting under color of state law, deprives another of the right, privilege or immunity secured by the Constitution or the laws of the United States." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). Section 1983 does not create any substantive rights; it provides civil litigants a procedure to redress the deprivation of rights established elsewhere. *Id*. (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)). To assert a section 1983 claim, "a plaintiff must establish that a person acting under the color of state law deprived him of a federal right." *Id*.

#### B. Analysis

CMC is a private company which contracts to provide management services relating to medical and dental care for inmates at OCF. (*See* Pl.'s Br. at 9; Pl.'s Ex. A). *See also Swinton v. Corr. Med. Care, Inc*., No. 15-CV-00053A(F), 2020 WL 9607024, at *10 (W.D.N.Y. Dec. 22, 2020), *report and recommendation adopted*, 2021 WL

2018846 (W.D.N.Y. May 20, 2021) (discussing liability of CMC and noting that it is a private company). A municipal contractor, such as CMC, has been held to act under color of state law when, as a medical provider for a county correctional facility, it "performs a function traditionally 'within the exclusive prerogative of the state.'" *McNeil v. Correctional Medical Care*, 2019 WL 4415528, at * 9 (N.D.N.Y. Sept. 16, 2019) (quoting *Bess v. City of New York*, 2013 WL 1164919, at * 2 (S.D.N.Y. Mar. 19, 2013)). Thus, for purposes of this recommendation, this court assumes that CMC is acting under color of state law.

## IV.     Municipal Liability/Private Employer

### A.     Legal Standards

Even if the private employer acts under color of state law, "[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees unless the plaintiff proves that action pursuant to official . . . policy of some nature caused a constitutional tort." *Rojas v. Alexander's Dep't Store, Inc*., 924 F.2d 406, 408 (2d Cir. 1990). Because CMC is a municipal contractor, the standard for determining its liability is the same as that required to establish municipal liability. *Swinton, supra.*

"A municipality or other local government may be liable under [section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978). A *Monell* claim requires "'the existence of a formal policy which is officially endorsed by the municipality, or a practice so persistent and widespread that it constitutes a custom or usage of which supervisory

authorities must have been aware, or that a municipal custom, policy, or usage can be inferred from evidence of deliberate indifference of supervisory officials to such abuses.'" *Swinton, supra* (quoting *Iacovangelo v. Correctional Medical Care*, 624 F. App'x 10, 13-14 (2d Cir. 2015) (citing *Jones v. Town of East Haven*, 691 F.3d 72, 80–81 (2d Cir.2012)).

### B. Analysis

In this case, plaintiff has failed to plead that the asserted constitutional deprivations were pursuant to an official custom or policy as required for liability under *Monell*.

#### 1. Conditions of Confinement Standard

Plaintiff was likely a pretrial detainee during the events that are the basis for his claims. As a pretrial detainee, plaintiff's conditions of confinement claims arise under the Due Process Clause of the Fourteenth Amendment.[5] *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Under the Due Process standard, plaintiff must satisfy two elements to state such a claim: "(1) an 'objective' element, which requires a showing that the challenged conditions are sufficiently serious, and (2) a 'subjective' element, which requires a showing that the officer acted with at least deliberate indifference to the challenged conditions." *Michel v. Orange County*, No. 21-CV-9406 (CS), 2021 WL5529841, at *2 (S.D.N.Y. Nov. 24, 2021) (citing *Darnell*, 849 F.3d at 29).

The requirements for the objective element of this type of claim is the same for pretrial detainees and convicted prisoners – "the inmate must show that the conditions,

---

[5] If he were a convicted prisoner, his claims would arise under the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979).

7

either alone or in combination, pose an unreasonable risk of serious damage to his health" or safety, which "includes the risk of serious damage to 'physical and mental soundness.'" *Id.* (quoting *Darnell*, 849 F.3d at 30) (other citations omitted). "[P]rison officials violate the Constitution when they deprive an inmate of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Id.* (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted)).

The requirements for the "subjective" element vary, depending on whether a plaintiff is a pretrial detainee or convicted prisoner. *Id.* A convicted prisoner must allege that a correction official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also [have] draw[n] the inference." *Darnell*, 849 F.3d at 32 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). A pretrial detainee must allege "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. Negligence of corrections officials does not rise to the level of a federal constitutional violation under Section 1983. *Michel, supra* (citing *Daniels v. Williams*, 474 U.S. 327, 335-36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986)).

## 2. Application to Municipal Liability

The court would first note that plaintiff's claim that CMC was "negligent" in reviewing the menus would not rise to the level of a constitutional violation, even under the somewhat more lenient standard for pretrial detainees. Because plaintiff is pro se,[6] the court will look beyond plaintiff's allegation of negligence.

Plaintiff claims that CMC is responsible for "approving" a menu that did not provide plaintiff sufficient daily calorie intake. Plaintiff also makes various claims about the way in which the meals were served, including improper handling, spoiled food, and dirty service carts. Plaintiff makes these claims against CMC, Trinity, and defendant Sowers, who is the registered dietitian, charged with annually approving the menus. Plaintiff complains specifically about the Kosher meals that he received while incarcerated at OCF.

However, other than plaintiff's vague assertion that CMC "approved" a menu that was calorie deficient, there is absolutely no support for liability against CMC, using the standard for municipal liability.[7] Although there is no heightened pleading requirement for municipal liability claims, naked assertions are insufficient to state a claim under section 1983. *McLennon v. City of New York*, 171 F. Supp. 3d 69, 94-95 (S.D.N.Y. 2016) (citations omitted). Plaintiff has attached various documents to his amended complaint, including the contract signed by defendant CMC, effective April 1,

---

[6] The court must read pro se submissions to "raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017).

[7] The court must also point out that, to the extent that plaintiff makes claims about the quality or service of the food, even under plaintiff's interpretation of the contracts attached to his complaint, CMC and its employees would have no responsibility for the daily service of meals to inmates.

9

2015. This contract agrees only to provide "management services" to CBH Medical P.C. ("CBH") and SM Dental PC ("SM"), which are the entities providing the medical and dental services to OCF inmates. (Pl.'s Ex. A (Contract- Art. II, § 2.1(a), 2.1(b), 2.2). The contract specifically states that CMC will ***not*** exercise control over the manner or means by which CBH and SM perform their professional duties or responsibilities, nor will CMC engage in the practice of medicine or dentistry. (Pl.'s Ex. A - Contract Art. II, § 2.1(b)) (emphasis added). There is absolutely nothing in the contract which requires CMC to review or "approve" menus or diets which are provided to inmates or requires CMC to take part in any of the medical or dental care provided to inmates. As stated above, the contract requires just the opposite. Thus, plaintiff's alleged constitutional violation could not be based on the "policy" or "custom" or "deliberate indifference" of CMC or its officials.

Plaintiff seems to rely on a statement found in a document which appears to be the OCF request for proposal from food service vendors[8] in general. This document delineates the services that would be required from a company, hired to provide food services for inmates. (Pl.'s Ex. F). The nutritional requirements for meals are contained in the RFP, which contract was ultimately awarded to defendant Trinity. There is no dispute that Trinity provides the meals for OCF. One of the sections of the RFP provides that the "vendor" will have all menus approved "at least ***annually***" by a

---

[8] The document is entitled "Specifications For Inmate Food Service Contract at the Oneida County Correctional Facility Bid Ref. #1881." (Pl.'s Ex. F, Dkt. No. 42-1 at CM/ECF pp.73-144). The document contains general requirements for companies which submit bids to the County for such services. The court will refer to this document as the Request for Proposal ("RFP"). However, it is not a signed contract with Trinity, although there appears to be no dispute that Trinity is and has been the food service provider for OCF. (Pl.'s Ex. I, J, L).

10

registered dietitian, and that the vendor will provide copies of all the "special diet menus"[9] to the facility medical department and administrative office. (Pl.'s Ex. F, RFP § III(B)(1)(h) (copies of menus), (B)(1)(j) (dietitian review)) (emphasis added). An "Addendum" to the RFP, was sent to "prospective bidders," containing answers to "Bidder Questions." (Pl.'s Ex. H). One of the vendors asked a question about the number of calories that should be provided per day, referencing the "RDA minimal level of 2800," and the "answer" was "[v]endor needs to provide an average of 2900 calories. (Pl.'s Ex. H, CM/ECF p.123).

The documents attached to the complaint indicate that the menus were approved by defendant Sowers,[10] who is not employed by CMC,[11] and the sentence in the RFP which provides that a copy of the special menus will be given to the "facility medical department" does not support plaintiff's claim or make it in any way plausible under a municipal liability theory. There is no indication that CMC is the "facility medical department" or administration, even though plaintiff repeats this implication in his response to the defendant's motion to dismiss. Thus, plaintiff has not sufficiently alleged that the provision of calorie deficient meals, was due to any custom, policy, or usage by CMC, nor is there evidence of deliberate indifference of CMC's supervisory

---

[9] A "special" menu is defined as a "special, modified, medical, and/or religious diet." (RFP § III(B)(1)(e).

[10] (*See* Pl.'s Ex. I, Dkt. No. 42-1 at CM/ECF p.126-29) (Kosher Menu 5/4/17)).

[11] There is no indication in the contract that CMC will employ a dietitian. "Staffing Matrices" are attached as "Schedule A" to the contract signed by CMC, CBH, and SM. (Pl.'s Ex. A, Dkt. No. 42-1 at CM/ECF p.22). CMC "personnel" include a medical records supervisor and unit clerk. (*Id.*) In fact, neither CBH (medical), nor SM (dental) staffing matrices indicate that the companies employ a dietitian. (*Id.*)

11

officials to such abuses. In fact, it is clear from the documents attached to plaintiff's complaint that employees of CMC had no responsibility for reviewing or "approving" any menus that were provided to inmates at OCF. Plaintiff's complaint may be dismissed in its entirety as against CMC.[12]

## V. Opportunity to Amend

### A. Legal Standards

Generally, when the court dismisses a pro se complaint for failure to state a claim, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *See Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 238-39 (E.D.N.Y. Jan. 28, 2015) (considering whether to grant plaintiff leave to amend after finding that plaintiff failed to state a plausible claim under section 1983) (citing *Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000)). In *Cuoco*, the Second Circuit held that leave to amend should be denied where "better pleading will not cure" the defects in a plaintiff's complaint. *Id.*

### B. Analysis

This court finds that no amendment of plaintiff's complaint will cure the deficiency herein. CMC clearly has no responsibility for reviewing menus for inmates at OCF. CMC provides management services for other medical professional corporations which are responsible for hiring staff to provide medical and dental services to OCF inmates. There is no amendment to plaintiff's already amended complaint that could state a *Monell*-type claim against CMC. Because CMC was not

---

[12] The court notes that the plaintiff's nutrition claims are proceeding against defendants Trinity and Sowers.

12

responsible for reviewing plaintiff's Kosher menu, it could not have done so unconstitutionally, in furtherance of a policy, custom, or with deliberate indifference to constitutional abuses. Thus, the court recommends denying plaintiff the opportunity to amend as against CMC.

**WHEREFORE**, based on the above, it is

**RECOMMENDED**, that defendant **CMC's** motion to dismiss (Dkt. No. 81) be **GRANTED**, and that the complaint be **DISMISSED IN ITS ENTIRETY** as against defendant **CMC**, without the opportunity to amend.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: January 6, 2022

Andrew T. Baxter
U.S. Magistrate Judge