## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

AKO BURRELL,

                    Plaintiff,

      v.                                        9:19-CV-1629
                                                 (TJM/ATB)

ROBERT MACIOL, et. al.,

                    Defendants.

---

AKO BURRELL, Plaintiff pro se
PATRICK M. CAREY, ESQ., for Defendants Trinity Food Service Group Inc. and
Jennifer Sowers

ANDREW T. BAXTER, United States Magistrate Judge

### REPORT-RECOMMENDATION

In the relevant portions of this amended civil rights complaint, plaintiff alleges Fourteenth Amendment due process violations, allegedly committed by defendants Trinity Food Service Group Incorporated ("Trinity") and Jennifer Sowers relating to plaintiff's diet at Oneida Correctional Facility ("OCF") between October of 2016 and October of 2017. (Amended Complaint ("AC")) (Dkt. No. 42).  Presently before the court is a motion for summary judgment filed by these two defendants. (Dkt. Nos. 123, 145 (amended memorandum of law)).  Plaintiff has filed a response in opposition to the motion, and defendants have filed a reply. (Dkt. Nos. 140, 150).

This summary judgment motion has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c). For the following reasons, this court agrees with defendants and will recommend dismissal of the amended complaint as against both Trinity and Sowers.

## DISCUSSION

### I.    Procedural Background

Defendants Trinity and Sowers are the remaining two defendants in this action, initially brought by plaintiff in December of 2019 against eighteen defendants, raising a multitude of issues. (Dkt. No. 1). Plaintiff's amended complaint was filed on March 10, 2021. (Dkt. No. 42). On August 23, 2021, I recommended granting a motion for summary judgment filed by Robert Maciol, Robert Senkowski, and Gregory Pfliger ("the County defendants") based on a release of liability signed by plaintiff, after reaching a settlement in two previous actions filed in the Northern District of New York.[1] (Dkt. Nos. 50, 95). Senior Judge McAvoy adopted my report-recommendation on March 23, 2022. (Dkt. No. 131).

Claims against Correctional Medical Center ("CMC") were dismissed after this court recommended granting its motion to dismiss on January 6, 2022, which was adopted by Judge McAvoy on January 25, 2022. (Dkt. Nos. 119, 122).  In my recommendation, I found that plaintiff stated no basis for liability on the merits against CMC, a private contractor providing medical care to the inmates at OCF. (Dkt. No. 119 at 9-12).

Plaintiff has filed a notice of appeal relating to the dismissal of the County defendants, arguing that the release he signed was not valid in itself, and in the alternative, the release did not apply to the instant action. (Dkt. Nos. 137, 138).  The appeal is presently pending before the Second Circuit Court of Appeals. *Burrell v.*

---

[1] *Burrell v. Rothdeiner et al.*, No. 9:l7-CV-906 (LEK/TWD) and *Burrell v. Maciol et al.*, No. 9:19-CV-160 (TJM/DJS).

2

*Oneida County*, No. 22-686.

## II.   **Jurisdiction**

### A.   **Legal Standards**

Before this court may decide the remaining defendants' motion, I must determine whether I have jurisdiction to make such a decision.  Generally, the filing of a notice of appeal divests the district court of jurisdiction over issues decided in the order that is being appealed. *Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir.1996)).  "The divestiture of jurisdiction rule is, however, not a per se rule.  It is a judicially crafted rule rooted in the interest of judicial economy [.]" *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996).  In *Rodgers*, the Second Circuit noted that "[w]e fail to see any efficiency in allowing a party to halt district court proceedings arbitrarily by filing a plainly unauthorized notice of appeal which confers on this court the power to do nothing but dismiss the appeal." 101 F.3d at 251-52.  Thus, I must determine whether the order dismissing only the County defendants was ripe for appeal.  If the order was not appealable, this court is not divested of jurisdiction to consider the motion for summary judgment filed by the remaining defendants, Trinity and Sowers.

### B.   **Application**

Plaintiff filed a notice of appeal from Judge McAvoy's order dismissing the action against the County defendants based on a release signed by the plaintiff. However, Judge McAvoy did not enter a final judgment in favor of those defendants, and his order did not dispose of other defendants in the action, including the two remaining defendants, who subsequently filed the instant summary judgment motion,

3

based, in part, on the same release.  "[A]n order denying summary judgment or granting partial summary judgment cannot by itself form the basis of an appeal because it is nonfinal." *LaTrieste Rest. & Cabaret, Inc. v. Vill. of Port Chester*, 96 F.3d 598, 599-600 (2d Cir. 1996) (quoting *United States v. 228 Acres of Land & Dwelling*, 916 F.2d 808, 811 (2d Cir. 1990)).  Because Judge McAvoy's order approving my report-recommendation did not dispose of the entire case, it was nonfinal, and not appealable under the general rule cited above.

However, this does not end the court's inquiry.  An exception to this general rule is available under the "collateral order doctrine," which provides for appellate review if the court "'finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *Weaver v. Brenner*, 40 F.3d 527, 533 (2d Cir. 1994) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

This doctrine has been applied in cases where summary judgment motions based on claims of qualified immunity were *denied*.  *Johnson v. Jones*, 515 U.S. 304, 310-11(1995); *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985).  The denial of summary judgment may be immediately appealable because "the very thing from which the defendant is immune–a trial–will, absent review, occur and cannot be remedied by a later appeal." *LaTrieste Rest. & Cabaret, Inc.*, 96 F.3d at 599.  However, the *granting* of summary judgment based on qualified immunity does not lead to any loss of right that cannot be remedied on appeal. *Branson v. City of Los Angeles*, 912 F.2d 334, 335

& n. 1 (9th Cir. 1990). Thus, the collateral order doctrine would not allow an interlocutory appeal of such a ruling. *Id.*

The collateral order doctrine analysis has been applied to the denial of a dispositive motion seeking enforcement of a release of liability, such as the release at issue in this case. *Chaput v. Unisys Corp.*, 964 F.2d 1299, 1301 (2d Cir. 1992) (collecting cases). In cases where the court denied summary judgment based on the release, the order would be appealable because a valid release of liability, like qualified immunity, should prevent the releasee from undergoing a trial on the claims which were released. *Id.* In *Chaput*, the court specifically compared its analysis to the denial of a motion to dismiss based on qualified immunity or based upon double jeopardy in a criminal action. *Id.* However, in this case, Judge McAvoy *granted* the remaining defendants' motion for summary judgment based on the release, so the collateral order doctrine does not support an interlocutory appeal.

The enforceability of the release is an issue in the appeal of the County defendant's dismissal, as well as in the motion for summary judgment of defendants Trinity and Sowers. However, although Judge McAvoy granted partial summary judgment in favor of the County defendants, he did not enter a final judgment or authorize an interlocutory appeal. Because the plaintiff's appeal of Judge McAvoy's ruling to the Second Circuit is premature, this court is not divested of jurisdiction over the current defendants' motion for summary judgment. *See, e.g., Mitrione ex rel. Melissa v. Monroe*, No. 1:02-CV-526 (LEK/RFT), 2009 WL 2485825, at *2-3 (N.D.N.Y. Aug. 11, 2009) (because "defendants sought to appeal a non-final order

without first obtaining a certificate of appealability . . ., their appeal was plainly unauthorized and did not divest this Court of jurisdiction") (citations omitted).

### III.   **Relevant Facts**

Plaintiff states that he was incarcerated at OCF from October 20, 2016 to October 20, 2017. (AC ¶ 39).  Plaintiff claims that OCF had a "procurement policy" ("OPP") and a contract with defendant Trinity Food Service Group ("Trinity") to provide meals for the OCF inmates. (AC ¶ 41).  Plaintiff states that in October of 2016, he was served a "standard diet," but, at some unspecified time, his Jewish faith was "acknowledged" by OCF officials, and he was allowed to receive Kosher meals. (AC ¶ 44).

Plaintiff alleges that both the "standard" diet meals and the Kosher meals were inferior. (AC ¶ 46).  Plaintiff claims that meals were cold, meat was served "uncooked," and fruit was "spoiled," causing plaintiff to throw up.  Plaintiff alleges that the menus were "approved" by both dietician defendant Sowers and by former defendant Correctional Medical Center ("CMC").  Plaintiff claims that defendant CMC was "negligent" in its review of the menu because it approved a menu that was below the 2900 calories "required" by the OPP and "bid specification # 1881." (AC ¶ 46, 77) (citing Pl.'s Ex. F).  Plaintiff states that defendant Sowers and CMC had "official duties" to provide humane conditions of confinement to plaintiff, ensuring that he received adequate food and medical care.[2] (AC ¶ 46).

In my recommendation, dismissing the case against CMC, I found that plaintiff failed to plead that the asserted constitutional deprivations were pursuant to an official

---

[2] "Medical care" is not an issue in this motion.

6

custom or policy as required for liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). (Dkt. No. 119 at 7-12).  Plaintiff's "naked assertions" that CMC had anything to do with reviewing or approving menus were insufficient to state a claim for municipal liability. (*Id.*)  I noted in my report-recommendation that plaintiff had also named Trinity and Sowers, who did have some involvement in the plaintiff's food delivery. (*Id.* at 12 n.12).

Plaintiff central claim is that the Recommended Daily Allowance ("RDA") of 2900 calories was established by the National Academy of Sciences, New York Corrections Law § 45(6), and 9 N.Y.C.R.R. § 7009. (AC ¶ 47).  Plaintiff alleges that Trinity contracted to provide food service to OCF, and that Oneida County "required" Trinity to provide a menu that contained "an average of" 2900 daily calories. (*Id.*)  Plaintiff states that, after he "received the menu," he "realized" that Trinity was only providing 2600 calories, and that he was served between 2400 and 2600 calories per day in his Kosher menu. (AC ¶¶ 48-49).  In addition to the alleged caloric deficiency, plaintiff claimed that portion sizes were too small, food was spoiled, food was served frozen, and condiments were not appropriate for diabetics. (AC ¶ 51, 79, 84, 88).  Plaintiff claims that defendant Sowers "approved" the menu. (AC ¶¶ 49, 51).

## IV.   **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

"Even a pro se plaintiff . . . cannot withstand a motion for summary judgment by relying merely on the allegations of a complaint."[3] *Saldana v. Loc. 32B-32J Serv. Emps. Int'l Union*, No. 03 CIV.1853, 2005 WL 66895, at *2 (S.D.N.Y. Jan. 12, 2005)

---

[3] "Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding pro se. In the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit." *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 209-10 (N.D.N.Y. 2008)

(citing *Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996)). "Rather, when confronted with evidence of facts that would support judgment in the defendant's favor as a matter of law, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts." *Id.* (citing Fed. R. Civ. P. 56(e); *Jermosen v. Coughlin*, 877 F. Supp. 864, 867 (S.D.N.Y. 1999) (pro se plaintiffs must make proper evidentiary showing in order to defeat summary judgment). Evidence may be objectionable and inadmissible in connection with a summary judgment motion because, *e.g.,* it lacks foundation, is not based on personal knowledge of the source of the information, is irrelevant, or constitutes hearsay. *See Payne v. Cornell Univ.*, No. 18-CV-1442 (GTS/ML), 2021 WL 39684, at *14 (N.D.N.Y. Jan. 5, 2021), *aff'd*, No. 21-109-CV, 2022 WL 453441, at *2 (2d Cir. Feb. 15, 2022) (Statements which "contain[] hearsay, conclusory assertions not based on personal knowledge, and statements contradicted by [plaintiff's] own previous deposition testimony" may be disregarded, in the discretion of the judge reviewing a summary judgment motion).

## V.   General Releases

### A.   Legal Standards[4]

"[G]eneral releases are governed by principles of contract law." *Albany Savings Bank, FSB v. Halpin*, 117 F.3d 669, 672 (2d Cir. 1997). This rule applies even in cases involving pro se plaintiffs. *Duran v. J.C. Refinishing Contracting Corp.*, 421 F. App'x 20, 21 (2d Cir. 2011). Under New York law, "[w]here the language of a release is clear, effect must be given to the intent of the parties as indicated by the language

---

[4] This summary of the applicable law quotes liberally from *Swinson v. City of New York*, No. 12 Civ. 6080, 2015 WL 873390, at *2-3 (S.D.N.Y. Feb. 11, 2015).

employed." *Tromp v. City of N.Y.*, 465 F. App'x 50, 51 (2d Cir. 2012). "Under New York law, the construction of an unambiguous contract is a matter of law, appropriate for summary judgment resolution." *Robinson v. Pierce*, No. 11 CIV. 5516, 2012 WL 833221, at *5 (S.D.N.Y. Mar. 13, 2012) (collecting cases).

## B.   Analysis

As stated above, in January of 2022, I recommended granting a motion to dismiss filed by former County defendants, based on a general release signed by plaintiff on February 7, 2020, in favor of Oneida County and numerous county officials, including former defendants Maciol, Swenszkowski, and Pfliger, in return for consideration of $10,000. (Dkt. No. 95).  Judge McAvoy adopted the recommendation on January 25, 2022. (Dkt. No. 122). The release was signed in the following actions: *Burrell v. Rothdeiner, et al.*, 9:17-CV-906 (LEK/TWD), Dkt. Nos. 58-61; and *Burrell v. Maciol, et al.*, 9:19-CV-160 (TJM/DJS), Dkt. Nos. 32-35.  Although plaintiff has appealed Judge McAvoy's order enforcing the release on behalf of the County defendants, I may proceed to address the applicability of the release to plaintiff's claims against defendants Trinity and Sowers because, as discussed above, plaintiff's appeal is premature, and the district court has not been divested of jurisdiction to consider their summary judgment motion.

The "General Release of Claims" released the releasees:

> . . . from any and all causes or rights of action, suits, actions, claims, or damages whatsoever which the undersigned Releasor has, ever had, or may have arising out of any actions, inactions, conduct, decisions, behavior, or events occurring on or before the date of this Release of Claims, including, but not limited to, any such claims arising out of Releasees' activities

10

in regard to Releasor which were asserted, or could have been
asserted, in the actions entitled Burrell v. Rothdeiner et al.,
Civil Action No. 9:l7-[CV]-00906 and Burrell v. Maciol et al.,
Civil Action No. 9:19-[CV]-00160, in the United States
District Court for the Northern District of New York, in which
Releasor is Plaintiff, alleging claims inter alia under 42 U.S.C.
§ 1983, including without limitation claims for damages,
costs, and attorney's fees.

(Dkt. No. 95 at 3) (citing Dkt. No. 50-2).  In addition to the named defendants, the

release applied to their "predecessors, heirs, executors, . . . agents, attorneys,

representatives, and employees, for conduct occurring prior to the execution of the

release. (Dkt. No. 50-2).  Plaintiff admitted that he signed the release on February 7,

2020. (Dkt. No. 95 at 3-4) (other citations omitted).  I found the language of the release

to be clear and unambiguous, notwithstanding plaintiff's various arguments to the

contrary. (Dkt. No. 95 at 7-10).

"It releases the County Defendants by name, among others, from all causes of

action and claims arising from conduct of the releasees on or before the February 7,

2020 date of the release, "including, but not limited" to any such claims that which

were ***or could have been asserted*** in the two actions which plaintiff settled with Oneida

County." (*Id.*) (citing Ex. A, Dkt. No. 50-2) (emphasis added).  Although plaintiff

admitted that he signed the release, he argued that the release should not apply to this

action because it was ambiguous, contained deceptive language, was inconsistent with

written communications that specified limitations on the release,[5] and that the release

---

[5] Plaintiff claimed that these "written communications" of which he was no longer in
possession, would show that the release was limited to the two actions explicitly referenced in the
release for which he was receiving the settlement. (Dkt. No. 95 at 6).

11

was procured by fraud while plaintiff was under duress. (Dkt. No. 95 at 6).

My analysis of the County defendants' motion for summary judgment was based largely upon the Second Circuit's decision in *Fontanez v. Sanchez*, No. 19-1735, F. App'x , 2021 WL 3556932 (2d Cir. Aug. 12, 2021). (Dkt. No. 95 at 6-10).  As I stated in my previous report-recommendation, pro se plaintiff, Fontanez, sued numerous correction officials, alleging violations of his civil rights while he was detained at Rikers Island between August 13, 2016, and the date he filed his complaint (February 23, 2018). (Dkt. No. 95 at 6); *Fontanez*, 2021 WL 3556932, at *1.  On August 6, 2018, Fontanez signed a general release, settling a prior action alleging other violations of his civil rights at Rikers Island. *Id.*  That general release provided, as relevant, that "'in consideration of the payment of [$200],'" Fontanez released the defendants in the prior action, the City and its employees, officers, or agents, and any entity represented by the Corporation Counsel from any liability for any civil rights violation that arose prior to signing the release.[6]  Upon a defense motion, the district court dismissed the complaint, reasoning that the language of the prior release was clear and unambiguous, encompassed the civil rights claims against the defendants in the more recent complaint, and discharged them from liability. *Id*.

On appeal, Fontanez argued that the prior release was ambiguous and alleged that defense counsel in the prior action told him that the release only applied to the claims in that case.  Fontanez also argued that he was subjected to duress, fraud, and undue

---

[6] I noted in my report-recommendation that the release also provided that it could not be changed orally, and that Fontanez read the release and fully understood it. (Dkt. No. 95 at 7 n.2) (citing 2021 WL 3556932, at *1).

influence when he signed the prior release because he was not represented by an attorney, he was asked to sign the agreement promptly, and he suffered from serious mental illness. *Id.* at *2.  The Second Circuit held that the district court properly dismissed Fontanez's complaint because the release was unambiguous, and Fontanez's arguments that the release should not be enforced were meritless. *Id.* at *1-2.

In the instant case, I found that, notwithstanding plaintiff's conclusory arguments to the contrary, the general release he executed was clear and unambiguous.  It released the County Defendants by name and the County, from all causes of action and claims arising from conduct of the releasees on or before the February 7, 2020 date of the release, "*including, but not limited*" to any such claims that which were or could have been asserted in the two actions which plaintiff settled with Oneida County. (Dkt. No. 95 at 7) (citing Ex. A, Dkt. No. 50-2) (copy of the release) (emphasis added). The complaint in this action was first filed on December 30, 2019, so it clearly asserted claims that accrued before the date of the release.

I also found that plaintiff knew of this action prior to signing the release, and still agreed to release all claims based on conduct prior to the date of the release, "including, but not limited to" the claims in the two prior actions. (Dkt. No. 95 at 8) (citing *Fontanez*, 2021 WL 3556932, at *2) (rejecting Fontanez's argument that he believed the release only applied to his prior cases because the terms of the agreement unambiguously and explicitly released the City and its employees "'from any and all liability, claims, or rights of action alleging a violation of [his] civil rights'").

I rejected plaintiff's attempts to marshal extrinsic evidence to vary the terms of

13

the release and his attempt at alleging fraud or deceit by opposing counsel in obtaining plaintiff's agreement to sign the release. (Dkt. No. 95 at 8-9).  I noted that plaintiff was an experienced pro se litigant who could not have reasonably relied upon any misrepresentation about the scope of the release that he signed, given the clear language of the document. (Dkt. No. 95 at 10) (citing inter alia *Jeffers v. New York*, No. 14-CV-5659, 2014 WL 6675676, at *1 (E.D.N.Y. Nov. 25, 2014) (plaintiff, although pro se at the time he signed the general release, was an experienced and sophisticated pro se litigant, one factor that the court could considered in deciding whether to enforce the release)).  I further noted that plaintiff received $10,000.00 in exchange for his settlement and release, which was a good deal more than the $200.00 received by Mr. Fontanez. (*Id.* at 10).  Plaintiff in this case was attempting to "reap the benefits" of his settlement without accepting its consequences. *Id.*

Thus, I have previously determined that the release signed by plaintiff in the instant case is valid because it is unambiguous, was not obtained by fraud or deceit, and applies to the conduct alleged in this case.  The time period covered by the release would also include the conduct alleged in the instant case.  The court must now determine whether Trinity and Sowers may enforce the release against plaintiff.

Defendants Trinity and Sowers were not named defendants in the previous two settled cases.  That is not necessarily an impediment to their inclusion in the individuals and entities covered in the release.  The defendants in *Fontanez* were not defendants in Mr. Fontanez's prior case, although they were covered in the specific language of the release, inter alia, because they were "represented by the Corporation Counsel," a group

specifically protected by release. *Fontanez*, 2021 WL 3556932, at *1.

The County defendants in this action were clearly protected by the release.  The court must, therefore, determine whether Trinity and Sowers are "predecessors, heirs, executors, . . . agents, attorneys, representatives, [or] employees" of Oneida County, as listed in the instant release.  The bid documents[7] specify that the vendor will be an "independent contractor," which shall "not be considered an employee of the County for any purpose," and its employees shall not hold themselves out as employees of the County. (Bid Document ¶ IV(A)(1) at 25) (Dkt. No. 140-3, CM/ECF p.34).  Thus, defendants Trinity and Sowers would not be covered under the release as County "employees."

However, defendant Trinity, an independent contractor for the County, providing food services for OCF, "steps into the shoes of [Oneida County]," and may thus, in the appropriate circumstances, be held liable under section 1983, under the same municipal liability standard as used against the County. *Tutora v. Aramark Corr. Servs*., No. 17-CV-9170 (KMK), 2022 WL 2237567, at *6-7 (S.D.N.Y. June 22, 2022).  The question then is whether Trinity and its employee Sowers, although specifically, not "employees" of Oneida County, are either agents or representatives of the County, stepping into the shoes of Oneida County for purposes of the release.

An independent contractor may still be considered an "agent." *United States v. Thomas*, 377 F.3d 232, 238 (2d Cir. 2004) (citing Restatement (Second) of Agency

---

[7] The actual contract, signed by Trinity to provide food services has not been submitted as an exhibit with this motion.  The plaintiff has filed the bid documents as an exhibit. (Pl.'s Ex. H) (Dkt. No. 140-3 at CM/ECF pp. 11-52).  These documents contain the requirements, applicable to the food service vendors hired by Oneida County to deliver food service to the inmate population at OCF. (*Id.*)

§ 14N (1958) ("One who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor.")  In this case, a review of the bid documents shows that Trinity was providing a service for Oneida County that the County was required to provide for its inmates.  The bid documents also show that Oneida County maintained a substantial amount of control over the vendor's activities. (Bid Document ¶ III(B) - establishing a multitude of rules and regulations that the contractor must follow in order to provide the services required).

In *Tutora v. Aramark*, 2022 WL 2237567, at *5, the court cited cases supporting the finding that when a private contractor performs "a role traditionally within the exclusive prerogative of the state . . . , [it] is the functional equivalent of the municipality." (quoting *Bess v. City of New York*, No. 11-CV-7604, 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013) in the context of medical care providers).  By providing food to OCF inmates, this court finds that Trinity performed a service that was in the exclusive prerogative of the municipality, and Oneida County exercised sufficient control over Trinity for the court to consider it an "agent" of the County with respect to the services provided to the inmates and to plaintiff.

Plaintiff's response to the defendants' motion reiterates the issues that plaintiff had with the food that he was served while at OCF and the damages that he alleges to have suffered based on the inadequacy of the calories and low quality food that he was served per day. (Dkt. No. 140)  Although he addresses the issue of the release, he states that he was led to believe that the release did not cover this action (Dkt. No. 140 ¶¶ 52-

54), an argument that he made before me on the County defendants' motion to dismiss, and one which I rejected in that report-recommendation.[8] (Dkt. No. 95 at 8 & n.4).

Although Trinity and Sowers were not defendants in 9:19-CV-160, plaintiff did mention alleged deficiencies in the food that he was served.  He did not assert the lack of calories or quality, instead, he claimed that the defendant County officials in that action "opened" his kosher meals, thus, contaminating them.[9] (Dkt. No. 1 in 19-CV-160 ¶¶ 61-62).

If, as plaintiff now claims, the food was severely inadequate during the same time, he certainly knew about it, and he could have raised the claim in 19-CV-160.  In fact, in his response to defendants' motion for summary judgment in the instant case, plaintiff has filed the grievances mentioning caloric and other deficiencies in the food, that he brought during the time that he was incarcerated at OCF. (*See* Pl.'s Ex. C at CM/ECF p.45, 46, 47) (Grievances dated July 17, 2017 (cold and inadequate food), October 2 and 3, 2017 (grievances complaining that defendants were opening his meal tray and contaminating the food and that the "dietician" who approved the Kosher menu violated the caloric "goal")).[10]  On September 25, 2017, plaintiff requested the calorie contents of his meals from CMC, and on September 29, 2017, October 4, 2017,

---

[8] Exhibit I in plaintiff's response to the instant summary judgment motion includes his objections to my August 2021 Report-Recommendation. (Pl.'s Ex. I) (Dkt. No. 140-3 at CM/ECF 54-58).

[9] The court also notes that the issue was resolved as a free-exercise religion claim, not a claim that the food itself was inadequate. (Dkt. No. 8 in 19-CV-160 at 24).

[10] Plaintiff's Exhibit G is the copy of a grievance, dated September 5, 2017, specifically mentioning Trinity and the "dietician." (Pl.'s Ex. G, CM/ECF p.10) (Dkt. No. 140-3).

and November 12, 2017, plaintiff complained to CMC[11] that he had eaten spoiled food or was not given enough calories. (Pl.'s Ex. D at CM/ECF 56, 57, 58, 59).  Clearly, plaintiff was well-aware of his problems with the food service, and had exhausted his administrative remedies or could have exhausted his remedies prior to filing 19-CV-160 in February of 2019.

The release applies to claims that were, or ***could have been***, raised in the prior action against the defendants and/or their agents, employees, or representatives. Based on my previous analysis in this case, I find that the release signed by plaintiff prevents him from bringing this action for inadequate food either against defendant Trinity or defendant Sowers, a Trinity employee,[12] and the amended complaint may be dismissed in its entirety as against these defendants.  In the alternative, this court also finds that the plaintiff's claims against Trinity and Sowers fail on the merits.

## VI.   Municipal Liability/Private Employer/Deliberate Indifference

### A.   Legal Standards

#### 1.   Municipal Liability

As stated above, Trinity acts under color of state law, stepping into the shoes of the County for purposes of section 1983 liability. *Tutora, supra.*  However, even if the

---

[11] Plaintiff's complaints to CMC alone, would not have been sufficient to exhaust his administrative remedies. *See Woodford v. Ngo*, 548 U.S. 81, 90-103 (2006) ("proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court). Plaintiff did bring grievances, as discussed infra.  His exhaustion is not an issue in this case.  The court is citing these complaints to CMC only to show that plaintiff was well-aware of his potential claims long before he filed 19-CV-160, and could have raised them in that action for purposes of the release.

[12] In her declaration in this action, defendant Sowers states that she is an employee of Trinity. (Sowers Decl. ¶ 3).

private employer acts under color of state law, "[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees unless the plaintiff proves that action pursuant to official . . . policy of some nature caused a constitutional tort." *Rojas v. Alexander's Dep't Store, Inc*., 924 F.2d 406, 408 (2d Cir. 1990).  Because Trinity is a municipal contractor, the standard for determining its liability is the same as that required to establish municipal liability. *Tutora*, *supra*; *Swinton, supra.*

"A municipality or other local government may be liable under [section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. at 692.  A *Monell* claim requires "'the existence of a formal policy which is officially endorsed by the municipality, or a practice so persistent and widespread that it constitutes a custom or usage of which supervisory authorities must have been aware, or that a municipal custom, policy, or usage can be inferred from evidence of deliberate indifference of supervisory officials to such abuses.'" *Swinton, supra* (quoting *Iacovangelo v. Correctional Medical Care*, 624 F. App'x 10, 13-14 (2d Cir. 2015) (citing *Jones v. Town of East Haven*, 691 F.3d 72, 80-81 (2d Cir. 2012)).

## 2.    Deliberate Indifference/Food

The Due Process Clause of the Fourteenth Amendment governs a pretrial detainee's conditions of confinement claim. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). There are two prongs to such a claim: "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' . . . or 'mental element prong,'

showing that the officer acted with at least deliberate indifference to the challenged conditions." *Drew v. City of New York,* No.18-CV-10719 (LTS/RWL), 2022 WL 19705, at *5 (S.D.N.Y. Jan. 3, 2022). (quoting *Darnell*, *supra*) (citing *Jabber v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (explaining that, while "there is no static test to determine whether a deprivation is sufficiently serious[,]" inmates may not be deprived of basic human needs such as food, clothing, shelter, medical care, and reasonable safety, and they may not be exposed to conditions that pose an "unreasonable risk of serious damage to [their] future health") (internal quotations and citations omitted)).

### B.    Analysis

As stated above, plaintiff alleges that Trinity and Sowers were responsible for the meals served at Oneida Correctional facility in 2016 and 2017.  Plaintiff claims that he was required to be served 2900 calories per day, but he was served approximately 2700 calories per day, and the food was of substandard quality, causing him to lose weight and to have a variety of other health issues.  In support of the motion for summary judgment, defendant Sowers has filed a declaration. (Sowers Decl.) (Dkt. No. 123-4). Defendant Sowers states that she is the East Region Dietician for Trinity. (Sowers Decl. ¶ 3).  She is a registered dietician, with the Commission on Diatetic Registration, and she is a licensed dietician in New York State, specializing in food service and nutritional consultation for correctional institutions and detention facilities. (Sowers Dec. ¶ 4).  She holds a Bachelor of Science degree in Human Nutrition and Foods from Virginia Polytechnic Institute and State University and is a member of the American Dietetic Association, the Virginia Dietetic Association and the Association of

20

Correctional Food Service Affiliates. (*Id.*)

As the East Region Dietician for Trinity, defendant Sowers is responsible for, inter alia, designing and approving menus which include nutritionally adequate meals, "pursuant to the specifications, directives and guidelines of the correctional institutions, detention facilities and government agencies for which Trinity is contracted to provide food service throughout the Eastern region of the United States, including the Oneida Correctional Facility." (Sowers Decl. ¶ 5).  Defendant Sowers states that she analyzed and approved both the General Population and Kosher meals that were served to plaintiff during the time that he was incarcerated at Oneida. (Sowers Decl. ¶ 7).

New York State regulations provide that "the food service program in each local correctional facility shall ensure that all prisoners are provided with an appropriate level of nutrients and calories. Such appropriate level of nutrients and calories shall be based upon current recommended dietary allowances of the Food and Nutrition Board of the National Academy of Sciences, National Research Council." 9 N.Y.C.R.R. § 7009.2. (*See* Sowers Decl. ¶ 9).  The Recommended Dietary Allowance, set by the National Academy of Sciences - National Resource Council for males between the ages of 19 and 50 is a range from 2400 to 2800 calories per day, not a specific number of calories. (Sowers Decl. ¶ 10).

Defendant Sowers states that the General Population menu provides for an ***average*** of 2900 calories per day, and the Kosher menu provides an ***average*** of 2747 calories per day. (Sowers Decl. ¶ 11).  There is no National Academy of Sciences requirement that an inmate be served 2900 calories per day. (Sowers Decl. ¶ 10).

Defendant Sowers has attached the "Cycle Meal Nutritional Analysis," which includes a four-week nutritional breakdown of the kosher meals provided at OCF.[13] (Sowers Decl. ¶ 10 & Ex. A).  Defendant Sowers states that all the meals, if consumed as prepared, met or exceeded the minimum standards established by the National Academy of Science. (Sowers Decl. ¶ 12).

The menus were nutritionally adequate, and "to the best of [her] knowledge, information and belief each of the meals prepared for Plaintiff during his confinement at Oneida Correctional Facility were complete, nutritionally adequate and complied with the approved menus and related substitution policies in all respects ***prior to leaving Trinity's possession, custody and control***." (Sowers Decl. ¶ 14) (emphasis added).  Defendant Sowers stated that, at no time, did Trinity have a policy or custom of providing nutritionally deficient meals to the OCF population, and that she was unaware of any medical problems suffered by plaintiff relating to plaintiff's diet. (Sowers Decl. ¶¶ 15-16).  If she or Trinity had learned of such a problem, plaintiff would have been provided with a proper replacement meal. (Sowers Decl. ¶ 16).

The "Cycle Meal Nutritional Analysis" for May of 2017, shows that the General Population meals averaged 2900 calories per day, and the Kosher meals averaged 2747 calories per day. (Sowers Decl. ¶ 11 & Ex. A).  She states that these meals "are a nutritionally adequate diet." (Sowers Decl. ¶ 13).  To the extent that plaintiff's claim is only about the number of calories he received per day, such claim may be dismissed.  It is clear that there is no nutritional "standard" requiring a fixed 2900 calories per day,

---

[13] These numbers apply to "sedentary" males, which includes inmates. (Sowers Decl. Ex. A).

and plaintiff has not shown otherwise with admissible evidence.[14]

During plaintiff's deposition, he cited various cases in which Trinity and its employees were "involved" in a law suit over food service at a correctional facility. (Pl.'s Dep. at 41-42, 45-46).  He cited *Hill v. Montgomery*, No. 9:14-CV-933 (BKS/DJS), 2019 WL 5842822 (N.D.N.Y. Nov. 7, 2019).[15]  In *Hill*, plaintiffs brought a class action, challenging the nutritional value and quality of the food at the Montgomery County Jail, which was also provided by Trinity. *Id.* at *1.  Trinity, however, was not a defendant in *Hill*.  Plaintiff named only Montgomery County officials who were responsible for providing the food.  *Hill* was settled, but not by Trinity.  Plaintiff misspeaks when he alleges that Trinity "settled" in *Hill*.  On June 2, 2021, Judge Sannes approved a final settlement in *Hill*, and the case was "dismissed on the merits and with prejudice." *Hill v. Montgomery*, No. 9:14-CV-933 (BKS/DJS), 2021 WL 2227796, at *10 (N.D.N.Y. June 2, 2021).

Plaintiff also mentioned a case from the Southern District of Florida. *Shepard v. Alvarez*, No. 08-10090, 2009 WL 1872016 (S.D. Fla. May 21, 2009), *report-recommendation adopted*, 2009 WL 2207735 (S.D. Fla. July 21, 2009).  In *Shepard* plaintiff sued Linda Alvarez, the Food Service Director for the Monroe County

---

[14] During his deposition, defense counsel asked how plaintiff knew that he was not getting sufficient calories, and plaintiff stated that he could tell "by eye," based upon eating "a lot of meals." (Pl's Dep. at 39).  This response is clearly not admissible evidence that plaintiff was being served calorically insufficient meals.

[15] Judge Sannes issued various decisions in *Hill*, and plaintiff did not cite a specific opinion. However, the court has assumed that plaintiff is referring to the denial of the defendants' summary judgment in the above cited decision.

Detention Center ("MCDC")[16] and Sandra Sternal, the Regional Dietician for Trinity. While the court denied summary judgment to defendant Alvarez, the court granted summary judgment and dismissed the action in favor of defendant Sternal. *Id.* at *6.

In granting summary judgment in favor of defendant Sternal, the court reasoned that defendant Sternal's position, the same position held by defendant Sowers in this case, involved "designing menus that outline nutritionally adequate inmate meals under specifications, directives and guidelines of the correctional institutions, like MCDC, for which Trinity is contracted to provide food services in the Southeast Region of the United States." *Id.* The court further found that

> where the thrust of Shepard's complaint is that the designed menu is not followed, and that he does not receive the intended 2,800 calories per day, there is no showing of a causal connection between the defendant Regional Dietician, Sternal, and the deprivation alleged by plaintiff Shepard. In the absence of a showing that the essential element of causation has been satisfied, it is apparent that the complaint against defendant Sternal should be summarily dismissed.

*Id.*

Essentially, plaintiff in this action makes the same claims against defendant Sowers that the plaintiff in Shepard made against defendant Sternal. Defendant Sowers has submitted expert information regarding the menus designed for both the general population and the kosher meal recipients during the relevant time at OCF. Plaintiff's assumption that 2900 calories per day is "required" is incorrect, and he has failed to support this claim with any admissible evidence. The bid documents require only an

---

[16] This "Monroe" County is in Florida.

"average" of 2900 calories, and even though the kosher meals contain fewer average calories than the general population meals, a contract, or even a state regulation does not create a constitutional right. *Patterson v. City of New York*, No. 11 Civ. 7976(DLC), 2012 WL 3264354, at *4 (S.D.N.Y. Aug. 9, 2012) (violations of state regulations or "minimum standards" do not constitute violations of federal rights.) (citations omitted).

Defendant Sowers states that she was unaware of any issues that plaintiff had with his meals or his health. (Sowers Decl. ¶ 16).  Plaintiff has not presented admissible evidence that would indicate otherwise.  During plaintiff's deposition, he did not even remember that Jennifer Sowers was a defendant in this action, and until defense counsel pointed that out to plaintiff, he stated that he had never spoken to such an individual. (Pl.'s Dep. at 65-66).  Plaintiff made the unsupported claim that he wrote defendant Sowers a "letter" about the food, but never received an answer. (Pl.'s Dep. at 66). Thus, plaintiff has failed to raise a genuine issue of material fact with respect to defendant Sowers's personal involvement in any alleged deficiency in the food he was served, beyond the prescribed caloric content, which did not rise to the level of a constitutional violation.  Thus, the amended complaint may also be dismissed against her on the merits.

During his deposition, plaintiff stated that he could not remember many things, but asserted that he lost "well over 40 pounds." (Pl.'s Dep. at 56).  However, plaintiff's medical records indicate that when he arrived at OCF on October 20, 2016, he weighed 168.4 pounds. (Def.s' Ex. No. 3 at p.1) (Dkt. No. 123-6).  On April 5, 2017, he weighed 174.2. (*Id.* at p.2).  By May 27, 2017, plaintiff weighed 179 pounds. (*Id.* at p.3).  On

June 24, 2017, plaintiff weighed 177.4 pounds. (*Id.* at p.4).  On August 5, 2017, plaintiff weighed 174 pounds. (*Id.* at p.5).  On October 4, 2017, plaintiff weighed 171.2 pounds. (*Id.* at p.6).  Thus, when he left OCF, plaintiff weighed more than when he arrived, and during the period he claims that his food was substandard, he actually gained several pounds.  His statement that he lost "well over" 40 pounds is flatly unsupported by any evidence.  When he was confronted with these records at his deposition, he implied that the records might have been "fabricated."  However, there was absolutely no basis for such an allegation. (Pl.'s Dep. at 57).

This case is distinguishable from *Hill v. Montgomery*, a class action in which the plaintiffs submitted a great deal of evidence supporting their claims that the food, as served to them was deficient, and substitutions were not properly made when the kitchen ran out of a particular item.  During plaintiff's deposition in this action, he mentioned that one of his "experts" would be "William Graber, M.D." (Pl.'s Dep. at 67).  Dr. Graber was one of the defendants' experts in *Hill*, but plaintiff in this case did not explain how Dr. Graber was going to testify on plaintiff's behalf. (*Id.* at 67-68)  Plaintiff implied that he might be represented by the attorney who represented the plaintiff's in *Hill*, but then admitted that he did not have counsel. (Pl.'s Dep. at 73-75).  As stated above, although plaintiff testified that he lost "over 40 pounds," the medical records clearly show that when he left OCF he was slightly heavier than when he arrived.  Other than naked assertions, plaintiff has failed to assert that he had any health problems as the result of inadequate or spoiled food.

None of the allegations made by, or "evidence" submitted by plaintiff establish

that Trinity had a policy or custom of providing nutritionally deficient meals to the OCF population, either to the general population or to the individuals receiving Kosher meals.  Defendant Sowers has established that she approved nutritionally appropriate meals, and that she was unaware of any problems that were being experienced by the plaintiff relating to the meals he was actually being served.  Thus, plaintiff has failed to raise a genuine issue of material fact with respect to the conduct of either defendant.

WHEREFORE, based on the findings above, it is

RECOMMENDED, that defendants' motion for summary judgment (Dkt. No. 123) be GRANTED, and the amended complaint DISMISSED IN ITS ENTIRETY as against the remaining defendants TRINITY and SOWERS.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: August 26, 2022

Andrew T. Baxter
U.S. Magistrate Judge